UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Albert Woodland,                )
                                )    No. 12 C 0015
              Petitioner,        )
                                )
     v.                          )    Judge Thomas M. Durkin
                                )
Michael Lemke, Warden,           )
Stateville Correctional Center,[1] )
                                )
              Respondent.        )

## MEMORANDUM OPINION AND ORDER

Petitioner Albert Woodland, an Illinois state prisoner serving a 65-year prison term for the first degree murder of Lamont Winters, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. R. 11. Respondent Michael Lemke answered the petition, arguing that the petition should be denied because the claims raised in it are procedurally defaulted, not cognizable on federal habeas review, or barred from re-litigation by § 2254(d). R. 25. The habeas petition is denied, and the Court declines to issue a certificate of appealability.

## Background

The factual findings made by the last state court to adjudicate the claims raised in the § 2254 petition on the merits are presumed correct unless those

---

[1] Michael Lemke is the warden of Stateville Correctional Center where Woodland currently resides. Accordingly, Warden Lemke is substituted as the proper respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held."); *see also Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005).

findings are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Morgan v. Hardy*, 662 F.3d 790, 797-98 (7th Cir. 2011). Woodland has not attempted to rebut the state court's factual findings. Accordingly, the following sets forth those facts and the procedural background of Woodland's state criminal and postconviction proceedings as recounted by the state courts.

Prior to trial, Woodland filed a motion to quash his arrest and suppress evidence from it. R. 24-1 at 4-5. At the suppression hearing, Detectives Louis Munoz and William Whalen testified about their investigation into the April 29, 2001 murder of Lamont Winters. On October 25, 2001, Detective Munoz heard from an informant that Kenneth Winters (Lamont's uncle) was planning to kill Andre Williams because Kenneth thought Williams was involved in Lamont's murder. *Id.* at 5. Munoz, however, believed Kenneth was mistaken because Munoz had been informed that Williams was in custody at the time of the shooting so he could not have been involved. *Id.* Munoz then compiled a photo array of individuals he believed to have been involved in the murder. *Id.* The array did not include Williams or Woodland. Nearly two months later, on December 19, 2001, Munoz interviewed Kenneth who did not identify anyone from the photo array but did confirm that Lamont was shot by two black males. *Id.* Kenneth also described to Munoz the direction the shooters fled after the shooting, and his subsequent chase of them. *Id.*

In January 2002, Munoz interviewed Antwan Alcorn, who was standing near Lamont the night he was killed. *Id.* at 5-6. Alcorn was able to provide a physical

description of the two shooters, and further provided a possible motive for the shooting. *Id.* at 6. According to Alcorn, Lamont was murdered because he had shot and killed another member of the Gangster Disciplines. *Id.*

Munoz continued with his investigation by speaking with Ken Popovitz, a special agent in the Department of Housing and Urban Development. *Id.* Based on that conversation, Munoz then interviewed Williams who, it turned out, was not actually in custody at the time of the shooting but had information regarding the shooting. *Id.* Williams identified Gilbert Harris and Woodland—fellow members of the Gangster Disciples—as the shooters, and said that Lamont was murdered because he had killed another Gangster Disciple. *Id.* Williams negotiated an immunity agreement with the State where in exchange for his testimony against Woodland, he agreed to serve an eight-year sentence on a reduced robbery charge and to cooperate with police in other criminal cases. *Id.* at 6-7. At a subsequent interview with Munoz, Williams again named Harris and Woodland as the shooters and also discussed his own involvement in the shooting, detailing where the shooting was ordered, how he provided the guns for the shooting, how he accompanied them to the location where Lamont was known to hang out and pointed Lamont out to them, the red vehicle used in the shooting, the location the vehicle was parked beforehand, and the escape routes taken afterwards. *Id.* at 7.

Munoz also interviewed Kenneth's girlfriend Doris Clark, who corroborated some of the information Munoz had gathered during the investigation, including the direction the shooters fled and a description of the red car used to escape. *Id.*

In July 2002, Detective Whalen separately interviewed Angelina and Shawnee Donahue, individuals who were related to Lamont, who provided additional descriptions of the two shooters and corroborated information gathered from other witnesses such as the direction the shooters fled and the motive for the killing. *Id.* A couple of weeks later, Woodland was arrested and identified as one of the shooters in separate lineups by Kenneth and the Donahue sisters. *Id.*

Based on the evidence presented at the hearing, the state trial court denied the motion to quash and suppress, finding that the information supplying the basis for the arrest was sufficient to satisfy probable cause. *Id.* at 7-8.

At Woodland's bench trial, the State presented the testimony of Williams, Kenneth, and the Donahue sisters, who all testified to similar evidence provided during the hearing on Woodland's motion to quash arrest. *Id.* at 8. Williams testified that Lamont had killed a fellow Gangster Disciple and that he had given Woodland and Harris the guns used for the shooting. *Id.* He stated that on the night in question, he drove with Woodland and Harris to Lamont's location, he pointed out Lamont to them, and he saw them walk towards him and then heard gunshots. *Id.* Williams further testified that the next day, he saw Woodland who told him that Lamont was dead and that he had shot him "in the head and in the face." *Id.*

The state trial court found Woodland guilty of first degree murder and further found that he had personally discharged a firearm during the murder. *Id.* at 9. The trial court sentenced Woodland to 45 years of imprisonment based on the murder conviction and 20 additional years for the firearm discharge. *Id.* at 1, 4.

Woodland appealed his conviction and sentence, arguing that: (1) the evidence was insufficient to find him guilty; (2) the police lacked probable cause to arrest him; (3) trial counsel was ineffective for failing to present evidence that another witness, Antwan Alcorn, had identified another individual as the shooter; (4) the prosecutor violated due process by vouching for Andre Williams's credibility; and (5) the trial court considered improper factors when sentencing Woodland. *Id.* at 35-69; *see also id.* at 4, 9-18. The state appellate court affirmed. *Id.* at 18. Woodland then filed a petition for leave to appeal ("PLA") in the state supreme court, alleging that: (1) the police lacked probable cause for his arrest; (2) he was not proven guilty beyond a reasonable doubt; and (3) the prosecutor improperly vouched for the credibility of Williams. R. 24-3 at 12-19. The state supreme court denied the PLA. *Id.* at 40.

In 2009, Woodland filed a pro se postconviction petition under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, raising numerous claims but two that are relevant here: that (1) trial counsel was ineffective for failing to move to suppress the eyewitnesses' identifications on the basis that Andre Williams had been present in the police station during the lineups and had "pointed out [Woodland]" to them; and (2) appellate counsel was ineffective for failing to raise in Woodland's direct appeal that his trial counsel was ineffective. *See* R. 24-1 at 1-3. The state circuit court dismissed the petition as frivolous and patently without merit, and Woodland appealed, raising the same aforementioned claims. *Id.* at 1-2. The state appellate court rejected these claims on the merits. *Id.* at 2-3. Woodland's ensuing appeal to the state supreme court re-raised the same relevant claims, and

the state supreme court denied Woodland leave to appeal. R. 24-5 at 18-24; *id.* at 42.

This Court received Woodland's § 2254 petition on January 3, 2012. R. 1. In that petition, Woodland alleged that: (1) the evidence was insufficient to support his conviction; (2) his arrest violated the Fourth Amendment because the police lacked probable cause to arrest him; (3) the prosecutor violated his due process rights by vouching for Andre Williams's credibility; and (3) trial counsel was ineffective for failing to move to suppress the eyewitnesses' identifications. The Warden answered the § 2254 petition, arguing that: (1) Woodland's improper vouching claim was procedurally defaulted; (2) his sufficiency-of-the-evidence claim was barred from re-litigation by § 2254(d); (3) his ineffective assistance of trial counsel claim was similarly barred by § 2254(d); and (4) his Fourth Amendment claim was not cognizable on federal habeas review.[2] R. 25.

## Analysis

### I.    Improper Vouching Claim

Woodland claims that that the State violated his due process rights when, during trial, the prosecutor made comments that improperly vouched for the credibility of one of the State's key witnesses, Andre Williams. The Warden says that Woodland procedurally defaulted this claim for purposes of federal habeas review because the state appellate court, when adjudicating the claim, declined to

---

[2] The Warden concedes that Woodland's claims are timely and that they are not barred by non-retroactivity or non-exhaustion principles. R. 25 at 3.

review the merits of the claim based on independent and adequate state law grounds. The Warden is correct.

"To preserve a question for federal collateral attack, a person must present the contention to every level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Even when a habeas petitioner has presented a claim to the state courts, that claim will be considered procedurally defaulted if the state courts declined to reach the merits of the claim "on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *see also Perruquet v. Briley*, 390 F.3d 505, 514-15 (7th Cir. 2004). In other words, "[w]hen a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). A state court decision rests on such independent state grounds when the state court "refuses to reach the merits of a [habeas] petitioner's federal claims because they were not raised in accord with the state's procedural rules," *id.*, and the decision does not depend upon a federal constitutional ruling on the merits, *see Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002). *See also Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). State court decisions are adequate to bar federal habeas review only when they rest upon firmly established and regularly followed state practice. *Smith*, 598 F.3d at 382.

Here, Woodland's claim that the State violated due process when the prosecutor vouched for Williams's credibility is procedurally defaulted because the

state appellate court's decision that Woodland failed to comply with Illinois rules regarding preservation of errors rested on an independent and adequate state law ground. Specifically, when presented with Woodland's due process claim, the state appellate court on direct appeal declined to consider the merits of the claim, explaining that by failing to object to the allegedly improper statements by the prosecutor at trial and by further failing to include the claim of error in a post-trial motion, Woodland had waived his claim of error. R. 24-1 at 15-17. Then, reviewing Woodland's due process claim for plain error, the state appellate court concluded that none of the prosecutor's comments rose to the level of plain error. *Id.* Woodland contends that this review for plain error was a decision on the merits, but the Seventh Circuit has explicitly rejected this argument. Indeed, the Seventh Circuit has "repeatedly explained that where a state court reviews [a] claim for plain error as the result of a state procedural bar such as the Illinois doctrine of waiver, that limited review does not constitute a decision on the merits." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (collecting cases).

Because the state appellate court clearly and expressly relied on Illinois's well-established doctrine of waiver when it rejected Woodland's claim and its subsequent consideration of the claim for plain error review did not constitute a merits review, the state court's rejection of Woodland's claim rested on an independent and adequate state law ground.[3] Woodland's claim is therefore

---

[3] Woodland has wisely refrained from arguing that the Illinois waiver rule is not a firmly established and regularly followed state practice. *See Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005).

procedurally defaulted. *See, e.g., Aguallo v. Atchison*, No. 12 C 48, 2013 WL 6009262, at * 8 (N.D. Ill. Nov. 12, 2013).

When a habeas petitioner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the petitioner can demonstrate cause and prejudice to excuse the default, or demonstrate that he is actually innocent, so that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, *see also Kaczmarek*, 627 F.3d at 591. Neither exception is applicable here because Woodland makes no attempt to invoke one. Accordingly, the Court will not consider either manner of excusing his default. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008); *Bell v. Pierson*, 267 F.3d 544, 555 n. 6 (7th Cir. 2001). Nor does the record, in any event, support the application of either exception.

## II.     Sufficiency-of-the-Evidence Claim

Woodland claims that the evidence presented at his trial was insufficient to prove him guilty beyond a reasonable doubt. Because the state courts adjudicated Woodland's fully and fairly presented sufficiency-of-the-evidence claim, this Court is constrained from granting habeas relief unless Woodland can demonstrate that the state appellate court's rejection of the claim "was contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000), or "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," § 2254(d)(2); *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). In applying the § 2254(d) standard, the federal habeas court reviews "the decision of the last state court that substantively adjudicated each claim." *Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009). The last state court to adjudicate Woodland's sufficiency-of-the-evidence claim on the merits was the state appellate court in Woodland's direct appeal, so that is the decision this Court must review.

A state court decision involves an "unreasonable application" of Supreme Court precedent within the meaning of § 2254(d)(1) when the "state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (internal quotation marks omitted) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786 (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. "This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means

something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation marks omitted); *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.") (internal quotation marks omitted); *see also Richter*, 131 S. Ct. at 786 ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

In rejecting Woodland's sufficiency-of-the-evidence challenge, the state appellate court reasoned:

> [Woodland] primarily argues that the testimony of Williams was inherently unreliable because he received leniency from the State as well as State-sponsored relocation. Here, the trial court heard Williams' testimony which detailed with great specificity [Woodland's] involvement in Lamont's shooting. He was subjected to multiple cross-examinations, and the trial court was fully informed by both the defense and the State regarding Williams' criminal background, the evidence implicating him as an accomplice in the underlying case, as well as the terms of his negotiated plea agreement. The other witnesses that testified corroborated various portions of his account, motives for the shooting, with three of those witnesses separately identifying [Woodland] in lineups subsequent to his arrest. It is also important to note that [the trial judge] presided over both the hearing to quash the arrest and the trial, and on multiple occasions, stated the need to highly scrutinize Williams' testimony and that reliance on it should be cautious. After carefully reviewing the record, we find that Williams' testimony was sufficiently detailed to sustain [Woodland's] conviction, and that despite the alleged infirmities of Williams' testimony, eyewitnesses identified [Woodland], and further corroborated Williams' account of [Woodland's] actions. Accordingly, we find that the trial court had sufficient evidence before it to support a finding of guilt.

R. 24-1 at 10-11.

The state appellate court's holding was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Sufficiency-of-the evidence claims are governed by the standard set forth in *Jackson v. Virginia*, which held that due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979) (emphasis in original); *see also Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (per curiam).

The state appellate court correctly recognized and articulated this standard. *See* R. 24-1 at 10 ("When a defendant challenges the sufficiency of the evidence to support his conviction, this court must determine, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."). Because the state appellate court correctly articulated the governing legal standard, its decision was not contrary to clearly established federal law. *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003) (holding state court's decision was not contrary to clearly established federal law where court recognized *Jackson* standard).

Nor was the state appellate court's rejection of Woodland's sufficiency-of-the-evidence claim an unreasonable application of the *Jackson* sufficiency standard. It is axiomatic that the testimony of a single eyewitness suffices for a conviction. *See Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."). Here, Williams provided detailed testimony

regarding Woodland's involvement in Lamont's shooting, various parts of which were corroborated by other witnesses. To be sure, Williams received leniency in exchange for his testimony implicating Woodland. But Williams was subject to multiple cross-examinations at trial, and the trial court was fully aware of his criminal background, the evidence demonstrating his involvement as an accomplice in the shooting, and the terms of the negotiated plea agreement. Even without Williams's testimony, the evidence against Woodland was ample. Three eyewitnesses—who corroborated salient details of Williams's account of the shooting—positively identified Woodland as one of the shooters in lineups after Woodland was arrested and further identified Woodland at trial. In all, Williams's testimony, along with the testimony of the other eyewitnesses, was more than sufficient to convict Woodland of first degree murder.

Woodland challenges the trial court's treatment of Williams's testimony, but this challenge was made to the state appellate court, and based on the Court's review of the record, the Court cannot say that the state court's rejection of Woodland's challenge was objectively unreasonable. Woodland further challenges the identifications made by the eyewitnesses. The state appellate court, however, rejected these challenges too, finding that the lineup identifications were sufficient to corroborate Williams's testimony. Under *Jackson*, it is the responsibility of the trier of fact to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. at 319. And when responding to a sufficiency-of-the-evidence claim, "[t]he State is entitled to every

reasonable inference that may be drawn from the record," provided that the inference has "some support in the facts." *McFowler*, 349 F.3d at 451-52 (state appellate court's holding that evidence was sufficient to prove habeas petitioner guilty beyond a reasonable doubt was reasonable, even though there were irreconcilable inconsistencies in key witness's testimony; credibility and reliability of eyewitness testimony is question for fact-finder).

In all, viewing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences from the "basic facts" presented, the state appellate court reasonably concluded that despite Woodland's challenges to the credibility of Williams and the other eyewitnesses, any rational trier of fact could still have found Woodland murdered Lamont Winters beyond a reasonable doubt. The trial court was responsible for resolving any weaknesses in the witnesses' testimony and evaluating the weight and credibility to give that testimony. *See Garrett v. Acevedo*, 608 F. Supp. 2d 1005, 1017 (N.D. Ill. 2009). Thus, affording the state court's decision the deference required by § 2254(d), in addition to the deferential review already afforded to the state court under the *Jackson* standard, *Cavazos*, 132 S. Ct. at 6, the Court is compelled to deny habeas relief on this claim under § 2254(d)(1).

Woodland fleetingly states that the state appellate court's adjudication of his sufficiency-of-the evidence claim resulted in a decision that was based on an unreasonable determination of the facts warranting habeas relief under § 2254(d)(2). R. 28 at 13. A habeas petitioner cannot succeed on challenge to a state

14

court decision based on a factual determination under § 2254(d)(2) unless the state court committed an "unreasonable error." *Morgan*, 662 F.3d at 798 (internal quotation marks omitted). Section 2254(e)(1) provides the mechanism for proving unreasonableness. *Id.* "If a petitioner shows that the state court determined an underlying factual issue against the clear and convincing weight of the evidence, the petitioner has gone a long way towards proving that it committed unreasonable error." *Id.* (internal quotation marks omitted). "A state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Id.* (internal quotation marks omitted).

Woodland claims that the state appellate court failed to consider the "unimpressive credibility issues surrounding the prosecution's key witnesses." R. 28 at 13. Not true. The state appellate court gave careful consideration to the questions surrounding Andre Williams's credibility but found that the testimony of the other eyewitnesses, who the court necessarily found to be credible, corroborated Williams's account of the events. Woodland has failed to demonstrate how the state court committed unreasonable error, and accordingly, cannot demonstrate entitlement to habeas relief under § 2254(d)(2).

In sum, the state appellate court's rejection of Woodland's sufficiency-of-the-evidence claim was eminently reasonable, rendering habeas relief inappropriate.

## III.    Ineffective Assistance Claim

Woodland contends that trial counsel was ineffective for failing to move to suppress the lineup identifications of him as the shooter. According to him, the lineup identifications were unduly suggestive because at the police station where the lineups were conducted, Andre Williams pointed out Woodland to the witnesses who then identified him in the lineup. Because the state appellate court in Woodland's postconviction appeal adjudicated the merits of this claim, habeas relief on that claim is foreclosed unless that court's decision was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See* 28 U.S.C. § 2254(d)(1).[4] Woodland has failed to satisfy these criteria, so his claim is barred under § 2254(d)(1).

To prevail on a claim of ineffective assistance, Woodland must demonstrate that (1) counsel provided deficient performance, meaning his representation fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors or omissions, there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland*'s high bar is never an easy task," but on habeas review establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) "is all the more difficult." *Richter*, 131 S. Ct. at 788 (internal

---

[4]   Woodland does not seek federal habeas relief for this claim on the alternative ground that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). The Court therefore restricts its analysis of Woodland's ineffective assistance claim to whether Woodland can surmount the hurdle imposed by § 2254(d)(1).

quotation marks omitted); *see also Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) ("The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' [under § 2254(d)(1)] is a high one."). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that [a habeas petitioner] has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). When the "highly deferential" standards created by *Strickland* and § 2254(d) are applied together, review is "doubly deferential." *Knowles*, 556 U.S. at 123-24. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788.

Woodland cannot show that the state appellate court either contradicted or unreasonably applied *Strickland*. Here, after correctly identifying the applicable *Strickland* standard, R. 24-1 at 2, the state appellate court considered the factual basis of his ineffective assistance claim—that Andre Williams allegedly pointed out Woodland to the eyewitnesses—and found that it "had no arguable basis either in law or in fact and was unsupported by affidavit or other documentation." *Id.* at 3. The state appellate court observed that in fact, that factual premise was "completely contradicted by the record" because the testimony of the three

eyewitnesses—Angelina Donahue, Shawnee Donahue, and Kenneth Winters—specifically negated that factual claim. *Id.* Angelina testified at trial that when she viewed the lineup and identified Woodland, she had not been allowed to speak to anyone before viewing the lineup and that only a detective was present viewing the lineup with her; Shawnee testified that only a detective was present when she viewed the lineup and identified Woodland; and Kenneth testified that no one told him whom to identify, either before or during the lineup. *Id.*

Given this presumptively correct factual testimony which Woodland has failed to rebut, *see* § 2254(e)(1), it was not unreasonable for the state appellate court to conclude that the basis of Woodland's ineffective assistance claim had no factual support. In turn, it would therefore not have been unreasonable for the state appellate court to conclude that trial counsel was not deficient for failing to file a motion to suppress that lacked a factual basis. *See Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."), 792; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011). Nor would it have been unreasonable for the state appellate court to also conclude that Woodland was not prejudiced by failing to file what would have been an unsuccessful motion to suppress. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel.").

In sum, because Woodland has not demonstrated that the state appellate court's rejection of Woodland's ineffective assistance of trial counsel claim was contrary to, or an unreasonable application of, *Strickland*, § 2254(d)(1)'s re-litigation bar forecloses habeas relief.

## IV.    Fourth Amendment Claim

Woodland further brings a claim under the Fourth Amendment, arguing that the police lacked probable cause for his arrest. When the State has provided an opportunity for "full and fair litigation of a Fourth Amendment claim," such a claim is not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465, 494 (1976). A "full and fair" hearing occurs when the habeas petitioner was allowed to present his case in a proceeding that was not a "sham." *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013); *see also Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003) (stating even where petitioner had his day in court on Fourth Amendment claim, a state court process that amounts to a sham does not constitute full and fair hearing). "Evaluating the adequacy of the hearing thus requires [the federal habeas court] to give at least *some* attention to how the state court dealt with the merits of the claim." *Monroe*, 712 F.3d at 1114 (emphasis in original) (internal quotation marks omitted). In making this inquiry, the federal habeas court's "role is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself] that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Id.* A Fourth Amendment "blunder, no matter how obvious, matters only in conjunction with

other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment." *Miranda v. Leibach*, 394 F.3d 984, 998 (7th Cir. 2005) (internal quotation marks omitted).

Woodland had the opportunity to present his Fourth Amendment claim to the state courts, and the state court proceedings were not a sham. The record reflects that prior to trial, Woodland filed a motion to quash his arrest and suppress evidence from that arrest. R. 24-1 at 4. The state trial court held a hearing on Woodland's Fourth Amendment motion to suppress where Detectives Munoz and Whalen testified and where Woodland's counsel was able to thoroughly cross-examine those witnesses and present argument in support of Woodland's motion. R. 26-1 at 110-70, 186-202; R. 26-2 at 3-10.

After hearing the various officers detail their 15-month murder investigation, the trial court denied Woodland's motion, reasoning that although Williams identified both Woodland and Harris as being involved in the shooting, "we have to look very cautiously at Mr. Williams' pointing towards Mr. Harris and Mr. Woodland in this particular case because as we all know Mr. Williams received immunity from the government as far as his involvement in the shooting also of Lamont Winters." R. 26-2 at 37-38. The trial court observed that Williams was accountable in the shooting; indeed, with his testimony, he implicated himself, and but for the immunity deal with the State, Williams could have been charged with the murder. *Id.* The court noted that had Williams not been granted immunity for his testimony, his statements, which were against his penal interests, would have

been sufficient to establish probable cause for Woodland's arrest. *Id.* at 38. The trial court, however, concluded that despite the grant of immunity, the totality of the circumstances demonstrated there was sufficient corroborating evidence from the police investigation to support Williams's identification of Woodland and Harris as the two shooters: (1) the motive for Winters's murder, which was provided by Williams, was corroborated by Antwan Alcorn; and (2) specific details of the shooting provided by Williams were corroborated by other eyewitnesses. *Id.* at 38-41.

The state appellate court affirmed the trial court's denial, explaining:

Here, Williams' arrest was the product of a 15-month investigation. During that investigation, the detectives reviewed police reports, interviewed witnesses multiple times, and eventually were able to acquire information from an accomplice to the shooting. We have already stated that Williams' testimony and reliability were to be viewed with caution. It appears that the detectives understood this, because they did not seek to arrest [Woodland] until three months after Williams implicated [Woodland]. During that time, the detectives found that portions of Williams' account was corroborated by both the other witnesses and the physical evidence recovered from the crime scene. Furthermore, it was known that Williams had been working with federal agents from the Department of Housing and Urban Development in an undercover investigation prior to [Woodland's] arrest. In fact, the information Detective Munoz received concerning Williams came from Special Agent Popovitz, who believed Williams' information to be reliable enough to relate to Detective Munoz. We also note that Williams' plea agreement was conditional. If it is ever discovered that he did not tell the truth as to any and all crimes that he had planned, participated in, or had knowledge of, his plea agreement will be rendered null and void, and he can be prosecuted for any of those crimes and his statements could be used against him. After reviewing the record, we find that Williams' statement to Detective Munoz, when viewed with the corroborating statements of other witnesses and physical evidence, were sufficient to establish probable cause for [Woodland's] arrest.

R. 24-1 at 12.

In all, the state courts gave full and fair consideration to Woodland's Fourth Amendment claim. *Stone* requires nothing more from the state courts. *See Cabrera*, 324 F.3d at 531 (when confronted with *Stone* issue, federal habeas court should not "examine whether the [state] judge seemed to have done some quality preparation for the hearing or had a perfect understanding of the fine points of search and seizure law"). Because the state courts satisfied *Stone*'s standard by giving Woodland full and fair consideration to his Fourth Amendment claim, *Stone* precludes this Court from considering its merits. *See Monroe*, 712 F.3d at 1116. The claim is therefore denied.

## V.     Certificate of Appealability

Because Woodland's claims are procedurally defaulted, are not cognizable on federal habeas review, or fail to satisfy the standard of § 2254(d), his petition for a writ of habeas corpus is denied. Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also*

*Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). And where a petition is disposed of based on a procedural bar, without reaching the merits of the underlying constitutional claims, a certificate of appealability should issue only if reasonable jurists would find the adjudication of the antecedent procedural ruling "debatable." *Slack*, 529 U.S. at 484-85; *see also Lavin*, 641 F.3d at 832.

This Court's denial of Woodland's improper vouching and Fourth Amendment claims rests on well-settled precedent governing procedural default and the non-cognizability of Fourth Amendment claims in § 2254 proceedings. The Court's denial of Woodland's sufficiency-of-the evidence and ineffective assistance of trial counsel claims similarly rest on settled precedent regarding the treatment of these claims on federal habeas review. The application of that law to Woodland's claims do not present questions that reasonable jurists could debate should be resolved in a different manner. Accordingly, certification of these claims for appellate review is denied.

## Conclusion

For the foregoing reasons, Woodland's claims are procedurally defaulted, barred from re-litigation by § 2254(d), and are not cognizable on federal habeas review. Accordingly, Woodland's § 2254 petition is denied, and the Court also denies a certificate of appealability for any of the claims in the petition.

ENTERED:

_Thomas M Durkin_
Thomas M. Durkin
United States District Judge

Dated: January 6, 2014